**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANGELA RENEAU, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-00354 |
| Plaintiff, | |
| v. | |
| CENTRAL FLORIDA RESTAURANTS, INC. d/b/a TGI FRIDAYS, | |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Angela Reneau ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Central Florida Restaurants, Inc., doing business as TGI Fridays restaurants, ("Defendant"), for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* and its implementing regulations (the "ADA"), averring as follows:

**INTRODUCTION**

1.      Plaintiff brings this civil rights class action on behalf of all others similarly situated against Defendant for violations of the ADA in connection with Defendant's failure to provide and ensure equal access for individuals with mobility disabilities who patronize Defendant's TGI Fridays restaurants ("Defendant's restaurants").

2.      Despite passage of the ADA nearly thirty years ago, to this date, Defendant's restaurants are not fully accessible to persons with mobility disabilities. Defendant has discriminated, and continues to discriminate, against Plaintiff, and all others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the goods, services,

1

facilities, privileges, advantages and accommodations at Defendant's restaurants by failing to provide accessible dining areas.

3.      Defendant has also failed to make reasonable modifications to its policies, practices, and procedures that are necessary to provide its goods, services, facilities, and accommodations to individuals with mobility disabilities. By failing to undertake efforts to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals, Defendant subjects Plaintiff and those similarly situated to discrimination, exclusion, and unequal treatment in violation of the ADA.

4.      Defendant fails to provide individuals with mobility disabilities the most integrated setting appropriate for them within its restaurants by providing unequal, different, and separate benefits and by segregating and separating individuals with disabilities from individuals without disabilities. Specifically, Defendant fails to provide individuals with mobility disabilities the opportunity to choose the type of table to sit at and where to sit in a dining area through the placement, orientation, and use of inaccessible dining surfaces, thereby providing Plaintiff and those similarly situated the opportunity to participate in and benefit from Defendant's goods, services, facilities, and accommodations in a manner that is not equal to the experience that is afforded to other individuals without disabilities.

5.      Defendant will continue discriminating unabated unless and until enjoined as Plaintiff requests. Accordingly, Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory conduct, including an order directing Defendant to make alterations to its restaurants to make the restaurants fully accessible to and independently usable by people with disabilities to the extent required by the ADA; an order requiring Defendant to make all reasonable

2

modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis; and a declaration determining that Defendant's restaurants are in violation of Title III of the ADA and its implementing regulations, as described in this Complaint; an award of attorneys' fees, expenses, and costs associated with pursuit of this litigation; and any other such relief that this Court deems just and proper.

## THE PURPOSE OF THE ADA

6.      Congress passed the ADA, in part, because it found that "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination… continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

7.      Congress also found that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities". 42 U.S.C. § 12101(a)(5)

8.      When the ADA was signed into law by President George H.W. Bush, he declared: "Together, we must remove the physical barriers we have created and the social barriers that we have accepted. For ours will never be a truly prosperous nation until all within it prosper."[1]

9.      For almost thirty years, the ADA has been the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like

---

[1] EEOC.gov, Remarks of President George Bush at the Signing of the Americans with Disabilities Act, *available at*: https://www.eeoc.gov/eeoc/history/35th/videos/ada_signing_text.html

other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

10. Title III of the ADA and its implementing regulations broadly protect the rights of individuals with disabilities to independently and equally access places of public accommodation.

11. The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

## JURISDICTION AND VENUE

12. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

13. Personal jurisdiction exists for Defendant because Defendant owns, operates, leases, franchises and/or controls restaurants located in Illinois.

14.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## **PARTIES**

15.     Plaintiff Angela Reneau is, and at all times relevant hereto was, a resident of Chicago, Illinois.

16.     Plaintiff Reneau is a person with a double leg amputation who uses a wheelchair for mobility. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

17.     Plaintiff is a consumer who wishes to access Defendant's goods and services.  *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

18.     Defendant Central Florida Restaurants, Inc. is a registered foreign corporation organized under the laws of California, and is headquartered at 3550 Mowry Ave, #301, Fremont, California 94538.

19.     Defendant owns, operates, leases, franchises and/or controls TGI Fridays restaurants throughout Illinois.

## FACTUAL ALLEGATIONS

## PLAINTIFF'S EXPERIENCE

20.     In approximately September 2019, Plaintiff patronized Defendant's TGI Fridays restaurant located at 401 N Harlem Ave, Oak Park, Illinois 60301 (the "Subject Property"), which is approximately nine miles from Plaintiff's residence.

21.     Plaintiff regularly visits restaurants, including TGI Fridays restaurants, for dining and to socialize with friends. The ability to independently patronize restaurants is important to Plaintiff and her quality of life, serving as a critical social outlet for her.

22.     Plaintiff desired to be served at the Subject Property's bar dining area, and more specifically, desired to be served at and use the dining surfaces at the bar counter there.

23.     However Plaintiff could not be seated anywhere in the Subject Property's bar dining area because Defendant has failed to provide accessible dining surfaces at the bar counter for Plaintiff and others similarly situated to utilize and there is no other accessible seating in the bar dining area. Defendant only offers inaccessible seating, as depicted in the following images:



*Figure 1 – TGI Fridays, 401 N Harlem Ave*



*Figure 2 – TGI Fridays, 401 N Harlem Ave*

24.     Defendant provides one table in the bar area that is designated as "accessible."

25.     This table lacks the clear floor space required for accessible seating.[2]

26.     Because Plaintiff could not be seated in the bar dining area, Plaintiff was subsequently seated in another area of the restaurant that had a table low enough to accommodate her.

---

[2] Both the 1991 and 2010 ADA Standards for Accessible Design require accessible dining tables provide a clear space to accommodate users' legs and wheelchairs. Section 4.32.3 of the 1991 Standards requires this space to be at least 30 inches wide and 19 inches deep. This requirement was relaxed 2010 Standards: While the clear space must still be 30 inches wide, it needs only extend 17 inches under the table. This distinction is irrelevant to the table at issue; its support posts are 20 inches apart and 13 inches from the edge of the table.

27.     Plaintiff has visited and enjoyed TGI Fridays restaurants in the past and would like to patronize Defendant's restaurants, including the Subject Property, in the future and be served at the bar dining area; however, the lack of accessible dining surfaces and seating in the restaurant's bar dining area has deterred and continues to deter Plaintiff from patronizing Defendant's restaurants.

28.     Plaintiff intends to continue to visit Defendant's restaurants.

29.     Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's failure to provide accessible dining surfaces and seating to persons with mobility disabilities.

## DEFENDANTS' RESTAURANTS ARE INACCESSIBLE

30.     Defendant owns, operates, leases, and/or controls approximately 67 TGI Fridays restaurant franchises across Illinois, Florida, Indiana, Michigan, Minnesota, and Ohio.

31.     In Illinois, Defendant owns, operates, leases, and/or controls approximately 18 TGI Fridays restaurant franchises.

32.     On information and belief, Defendant is responsible for the design, construction, alteration, and operation of its franchised restaurants, including with respect to ADA compliance.

33.     On Plaintiff's behalf, an investigation of multiple locations owned, operated, leased and/or controlled by Defendant confirmed that, in addition to the Subject Property discussed above, Defendant's other restaurants also have bar dining surfaces that are not accessible to patrons who use wheelchairs or scooters for mobility, and do not provide for accessible seating in the bar dining area. Upon information and belief, the configuration and design of Defendant's restaurants follows a mandatory common design and construction plan, and Defendant's other restaurants

have the same inaccessible features identified above at the Subject Property. Defendant's inaccessible restaurants include but are not limited to:

      a.  302 West Army Trail Rd, Bloomingdale, IL 60108;

      b.  490 N Randall Rd, Batavia, IL 60510;

      c.  676 S Rand Rd, Lake Zurich, IL 60047;

      d.  2201 West 75th St, Darier, IL 60561;

      e.  5420 W 95th St, Oak Lawn, IL 60453; AND

      f.  6577 Grand Ave, Gurnee, IL 60031.

      g.

34.    Defendant's failure to provide individuals with mobility disabilities accessible dining surfaces or accessible seating in the bar dining areas is discriminatory, segregationist, and in violation of the ADA. Just as Defendant could not exclude customers from the bar dining area based upon race, the ADA precludes Defendant from segregating customers based upon disability.

35.    Because Defendant's restaurants are centrally owned, operated, and/or controlled by Defendant, and are subject to the same common design and construction plans that result in the discriminatory conditions found within the restaurants' bar dining areas, the scope of harm at issue in this matter can only be redressed through an injunction that encompasses the entirety of Defendant's network of restaurants and Defendant's centralized policies and practices.

## **CLASS ALLEGATIONS**

36.    Plaintiff brings this action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of herself and the following class:

> All individuals who use wheelchairs or scooters for mobility and who have been, or in the future will be, denied the full and equal enjoyment of bar dining services offered to patrons at any of Defendant's restaurants that lack accessible dining surfaces and seating at the bar counter and in the bar dining area.

37. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

38. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

39. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services and facilities due to the discriminatory conduct described above. The questions of law and fact that are common to the class include:

a. Whether Defendant operates places of public accommodation and is subject to Title III of the ADA and its implementing regulations;

b. Whether Defendant's restaurants' bar dining areas are inaccessible to Plaintiff and putative class members; and,

c. Whether Defendant's policies and practices discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations.

40. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who

11

are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

41.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION

### Violations of 42 U.S.C. §§ 12181, *et seq.*

42.     Plaintiff incorporates by reference each and every allegation contained in the previous paragraphs.

43.     Plaintiff brings this claim individually and on behalf of the defined putative class of individuals described above.

44.     Plaintiff is an individual with a mobility disability who uses a wheelchair for mobility. Plaintiff, accordingly, is an individual with a disability pursuant to the ADA, in that Plaintiff has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105.

45.     Defendant is a public accommodation under the ADA. 42 U.S.C. § 12181(7).

### Failure to Provide Accessible Facilities

46.     The ADA requires all public accommodations that are designed and constructed after January 16, 1993 to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12183(a)(1).

47.     Defendant's restaurants, upon information and belief, were designed and constructed after January 16, 1993, and were therefore required to be designed and constructed to be readily accessible to, and independently usable by, individuals with disabilities.

48.     The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

49.     Defendant's facilities must comply with either the 1991 Standards or the 2010 Standards, depending on when a given facility was constructed.[3]

50.     Defendant provides bar counter dining surfaces in their restaurants, at which Defendant provides the service of food and drink for customer consumption.

51.     The 1991 Standards set forth express requirements for restaurants with respect to the accessibility of dining surfaces, such as a bar counter: "Where food or drink is served at counters exceeding 34 inches (865 mm) in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches (1525 mm) in length minimum shall be provided in compliance with § 4.32 or service shall be available at accessible tables in the same area." 1991 Standards § 5.2.

---

[3] 28 C.F.R. § 36.406 establishes the circumstances that determine which ADAAG applies to facilities subject to 28 C.F.R. §§ 36.401 or 36.402: (1) facilities shall comply with the 1991 Standards if the date when the last application for a building permit is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010 (28 C.F.R. § 36.406(a)(1)); (2) facilities shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012 (28 C.F.R. § 36.406(a)(2)); and (3) facilities shall comply with the 2010 Standards if the date when the last application for a building permit is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012 (28 C.F.R. § 36.406(a)(3)).

52.     For Defendant's restaurants that were required to be constructed in compliance with the 1991 Standards, Defendant's restaurants' bar dining areas do not comply with the 1991 Standards, because:

   a.  Defendant does not provide a portion of the bar counter which is 34 inches or less in height;

   b.  Defendant does not provide a portion of the bar counter which is 60 inches in length that complies with Section 4.32 of the 1991 Standards; and

   c.  Defendant does not provide service at accessible tables in the same area as the bar counter.

53.     The dining surface accessibility requirement was modified in the 2010 Standards to provide: "Where dining surfaces are provided for the consumption of food or drink, **at least 5 percent** of the seating spaces and standing spaces at the dining surface shall comply with §902." 2010 Standards § 226.1 (emphasis added). "Dining surfaces" explicitly includes "bars, tables, lunch counters, and booths." 2010 Standards § 902.1 - Advisory.

54.     Section 902 provides that the top of a dining surface shall be 28 inches minimum and 34 inches maximum above the floor, and provide a clear floor space positioned for a forward approach with appropriate knee and toe clearance. 2010 Standards §§ 902.2-3.

55.     The 2010 Standards no longer provides an exception if service is available at accessible tables in the same area as an inaccessible dining surface. Instead, dining surfaces that are required to comply with Section 902 "shall be dispersed throughout the space or facility containing dining surfaces. . . ." 2010 Standards § 226.2.

56.     For Defendant's restaurants that were required to be constructed in compliance with the 2010 Standards, Defendant's restaurants' bar dining areas do not comply with the 2010 Standards because there is no provision for five percent of the seating spaces and standing spaces

14

at the bar counter to comply with Section 902 of the 2010 Standards; indeed, none of the seating and/or standing spaces at the bar counter and in the bar dining area comply with Section 902.

57.     The lack of accessible bar counters and seating in Defendant's restaurants demonstrates that Defendant's restaurants were not designed and constructed to be readily accessible to, and independently usable by, individuals with mobility disabilities, although it was structurally practicable for Defendant to do so.

## Denial of "Full and Equal" Enjoyment and Use

58.     The ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

59.     Defendant discriminated and continues to discriminate against Plaintiff and others similarly situated by denying "full and equal" enjoyment and use of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's restaurants during Plaintiff's visit and each incidence of deterrence.

## Failure to Provide the Most Integrated Setting

60.     Public accommodations are required to provide their goods, services, facilities, and accommodations "in the most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B).

61.     The Department of Justice defines the "most integrated setting" as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible."[4]

---

[4] https://www.ada.gov/olmstead/q&a_olmstead.htm

62.     Defendant has failed to provide the most integrated setting appropriate to the needs of Plaintiff and those similarly situated by limiting the areas and options for where Plaintiff may choose to eat and/or drink, resulting in a setting that segregates and separates individuals with mobility disabilities, preventing them from interacting with non-disabled individuals to the fullest extent possible.

### Failure to Modify Existing Policies, Practices, and Procedures

63.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

64.     By failing to provide accessible dining surfaces and seating, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination by failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

65.     Defendant has no policy, practice, or procedure, or else Defendants failed to create, implement, and maintain policies, practices, and procedures, to ensure individuals with mobility disabilities are not denied the opportunity to have the same dining experience at their restaurants as individuals without disabilities, resulting in a denial of the opportunity for individuals with mobility disabilities to have full and equal access to all of the goods, services, privileges, advantages, and accommodations that make up Defendant's restaurants.

66.     Defendant has further failed to create, implement, and maintain policies, practices, and procedures to comply with ADA building design and construction regulations and standards.

67.     A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of Defendant's goods, services, facilities, privileges, advantages, and accommodations.

68.     Defendant's ongoing and continuing violations of the ADA have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiff and those similarly situated.

69.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests judgment as follows:

a.      A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant failed to take action reasonably calculated to ensure that Defendant's dining surfaces and seating were fully accessible to, and independently usable by, individuals with mobility disabilities;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs:

     i.      Defendant to take all steps necessary to bring its restaurants' bar dining areas into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the dining surfaces are fully accessible to, and independently usable by, individuals with disabilities;

    ii.      Defendant to take all steps necessary to bring its restaurants' bar dining areas into full compliance with the requirements set forth in the ADA, and its

implementing regulations, so that the bar dining areas contain the requisite amount of accessible seating;

iii. Defendant to take all steps necessary to modify its policies, practices, and procedures to ensure that individuals with mobility disabilities are not denied the opportunity to have the same dining experience at Defendant's restaurants as individuals without disabilities, so that no individual with a mobility is denied the opportunity to have full and equal access to all of the goods, services, privileges, advantages, and accommodations that make up Defendant's restaurants;

iv. Defendant to take all steps necessary to modify its policies, practices, and procedures to ensure that Defendant's restaurants' bar dining areas comply with the ADA's building design and construction regulations and standards; and,

v. The Court shall retain jurisdiction for a period to be determined to ensure that Defendant has undertaken steps to remediate its restaurants and have adopted and are following an institutional policy and practice that will in fact cause Defendant's restaurants to comply with the ADA.

c. An Order certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

d. Payment of costs and reasonable attorneys' fees as provided for by law, and/or nominal damages; and

e. Such other additional or alternative relief as the Court finds just and proper.

Dated:  June 22, 2020                    Respectfully submitted,

                                         **CARLSON LYNCH, LLP**

                                         */s/ R. Bruce Carlson*
                                         R. Bruce Carlson
                                         Kelly K. Iverson
                                         1133 Penn Avenue, 5th Floor
                                         Pittsburgh PA, 15222
                                         Tel: (412) 322-9243
                                         bcarlson@carlsonlynch.com
                                         kiverson@carlsonlynch.com

                                         Katrina Carroll
                                         Nicholas Lange
                                         111 W. Washington Street
                                         Suite 1240
                                         Chicago, IL 60602
                                         Tel: (312) 750-1265
                                         kcarroll@carlsonlynch.com
                                         nlange@carlsonlynch.com

                                         *Attorneys for Plaintiff*